McKeon, EJ.
(concurring). I write separately from my colleagues, correct as I believe they are, to contrast my views about this tenant’s situation with those previously expressed in 542 E. 14th St. LLC v Lee (18 Misc 3d 98 [2007]), in which I concluded *54 that the avowed intention of the tenant therein to care for infirm parents was secondary to a design to permit her teenage daughter to remain alone in a rent-stabilized apartment while the tenant relocated some 3,000 miles away.
This court has long recognized that a rent-stabilized tenant may spend considerable periods of time away from a regulated apartment, caring for an infirm relative a great distance away, without “[mandating] a finding of nonprimary residence” (Kalimian v Holmberg, 2001 NY Slip Op 40297[U] [2001]; see also Nussbaum Resources 1, LLC v Gilmartin, 2003 NY Slip Op 50553DJ] [2003]). In my view, the test is one rooted in good faith and common sense. Merely making sure that parents take medicine — the (dubious) explanation offered by the tenant in Lee to justify a 3,000 mile move to California, not to live in her parents’ residence but elsewhere, was, even if credited, legally insufficient to permit a relocation for parental health reasons.
A tenant who wishes to spend considerable periods of time away from a stabilized apartment to care for an ailing parent should be prepared to justify such absences by establishing the medical condition of the parent and the health related reasons underlying the child’s decision to act as a caregiver. At trial, the tenant herein (Ms. Houpouridou) met that burden, while the tenant in Lee did not. Ms. Houpouridou’s mother was terminally ill and eventually passed away. Ms. Lee’s parents lived independently and actually enjoyed an improvement in their health, at least according to Ms. Lee’s trial testimony. Ms. Houpouridou’s circumstances were very much akin to the tenant in Kalimian. Both kept furnishings in their New York apartments and maintained bank accounts here; neither filed New York State or City income tax returns, apparently due to insufficient income during the relevant time period. On the other hand, the personal items left in her apartment and the New York bank account kept active by Ms. Lee were, so far as shown in that case, for the primary, if not exclusive use of her daughter.
Ms. Houpouridou never intended to abandon her New York home, nor did she act in a manner which suggested that she adopted Greece as her primary residence. Her absence from New York was motivated by her sense of familial duty, and her overseas stay was necessarily extended by her need to care for an ailing brother and her own unfortunate accident, which left her in a wheelchair for many months.
There was a time in many cultures when the care of a sick or elderly parent by a child was the hallmark of familial responsi *55 bility. But, according to that frequently uttered refrain, times change. Mothers or fathers, sometimes both, would often live under the same roof with their offspring and the hands-on care provided would be substantial. To the outsider, considerable sacrifice seemed involved, but for the caregiver child, the care of mom and dad was the natural progression in life’s journey: those who reared and raised, and gave life, would be comforted and looked after in the twilight of their own.
Sad to say, as with so many old-fashioned values, adherence dims with each new generation, and parental care in some instances has been reduced to an occasional call to a nurse’s aide or an infrequent, obligatory visit to a nursing home. But there are those, undoubtedly dwindling in number, who remain students of the old school, staying true to basic traditions and still giving life to words now seldomly spoken: “my mother will never go to a nursing home.” Ms. Houpouridou is one of those rare individuals and her heartfelt decision to travel to Greece to be at her mother’s side during a final illness should not visit upon her the draconian penalty of forfeiture of her long-held regulated apartment.
Davis and Schoenfeld, JJ., concur; McKeon, EJ., concurs in a separate memorandum.